UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| OSCAR ANTONIO DIAZ HUETE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>JESSIKA OLIVETH SANCHEZ SANCHEZ, )<br>)<br>Respondent. )<br>) | Civil Action No. 1:18cv01485-AJT |

**MEMORANDUM IN SUPPORT OF PETITIONER'S
MOTION FOR DEFAULT JUDGMENT**

Oscar Antonio Diaz Huete ("Petitioner"), through counsel, filed this action on December 4, 2018, seeking the return of his daughter (the "Child") after Jessika Oliveth Sanchez Sanchez ("Respondent"), the Child's mother, wrongfully removed the Child from her home country of Honduras. Respondent has failed to plead or otherwise defend and has made no appearance in this matter despite receiving service and full process. *See* Affidavit of Maya Eckstein (ECF No. 12-1). Petitioner accordingly requested the Clerk's entry of default, and on February 12, 2019, the Clerk entered default against Respondent on (ECF No. 13). Petitioner now moves for entry of default judgment pursuant to Federal Rule of Civil Procedure 55.

**I.      Background**

Both Petitioner and Respondent are Honduran citizens. In 2013, while living in Honduras, Petitioner and Respondent had a daughter together (the Child). (Pet. ¶ 2.) From 2013 through June of 2016, Petitioner, Respondent, and the Child lived together as a family in Honduras, although Petitioner and Respondent never married. (Pet. ¶ 2.) In June of 2016, Petitioner and Respondent separated, and Respondent subsequently married someone else; she took the Child to live with her. (Pet. ¶ 3.) Petitioner continued to support the Child by paying for a nanny and, when

she grew older, by paying for the Child to attend a private school. (Pet. ¶ 3.) Additionally, the Child lived with him most weekends. (Pet. ¶ 3.)

In March of 2018, the Child's school advised Petitioner that the Child had not attended classes since March 6, 2018; the school was unable to provide Petitioner with further information on the whereabouts of the Child. (Pet. ¶ 4.) Petitioner tried to call Respondent, but was unable to reach her. Petitioner also sought information from Respondent's family,[1] but they would not give him the location of Respondent and the Child. (Pet. ¶ 4.)

On or about March 30, 2018, Respondent called Petitioner and informed him that she and the Child were in the United States, but would not tell him where they were. (Pet. ¶ 5.) Based on the telephone number that Respondent used to call him, however, Petitioner was able to discern that the call came from somewhere in Virginia; he was subsequently able to obtain their address. (Pet. ¶ 5.) At no point did Petitioner ever agree that the Child could move to or live in the United States without him. (Pet. ¶ 6.)

At first, after alerting Petitioner of their presence in the United States, Respondent allowed Petitioner to talk on the phone with the Child almost every day. (Pet. ¶ 19.) Unfortunately, Respondent began restricting Petitioner's access to the Child in August of 2018, and, as things presently stand, Respondent rarely even permits Petitioner to speak to his daughter. (Pet. ¶¶ 7, 20.) Petitioner has repeatedly asked Respondent to return the Child to Honduras, but Respondent has refused these requests. (Pet. ¶ 19.)

Petitioner filed an Application for Assistance under the Hague Convention on International Child Abduction ("Application") with the U.S. State Department on March 23, 2019, when he

---

[1] At this time, Respondent had divorced the man that she married following her separation from Petitioner.

could not locate either the Child or Respondent. (Pet. Ex. C, ECF No. 1-3.) When Petitioner learned, shortly thereafter, that the Child and Respondent were in Manassas, Virginia, he updated his Application to reflect this new information.

A. The Hague Convention

The United States Congress adopted the Hague Convention in 1988, recognizing that "the international abduction or wrongful retention of children is harmful to their well-being" and that parents "should not be permitted to obtain custody of children by virtue of their wrongful removal or retention." 22 U.S.C. § 9001(a)(1)–(2).[2] Courts in receipt of Hague Convention Petitions are not called upon to make a custody determination. Rather, it is the Court's role to identify, in a manner consistent with principles of international comity and the treaty obligations of the United States, the proper forum in which such a determination should be made.

B. Service on Respondent

The underlying Petition (ECF No. 1) was filed on December 4, 2018, together with a Proposed Summons in a Civil Action (ECF No. 6). That same day, the Court issued the Summons for Respondent (ECF No. 7).

On December 12, 2018, the undersigned filed a Proof of Service of Summons with the Court (ECF No. 9), showing that service was properly completed on Respondent on December 10, 2018, in accordance with Virginia Law and Federal Rule of Civil Procedure 5(e)(1). (Aff. Maya Eckstein ¶ 4, ECF No. 12-1.) Specifically, Respondent was served by posted process. (*See* Proof of Service, ECF No. 9; Fed. R. Civ. P. 4(e) (permitting service according to the laws of the state in which the district court is located); Va. Code § 8.01-296(2)(b) (providing that "posting a copy of such process at the front door or at such other door as appears to be the main entrance of such

---

[2] A copy of the Convention was attached as Exhibit A to the Petition (ECF No. 1-1).

place of abode" is an acceptable form of service).) The Summons informed Respondent that she had until December 31, 2018 to submit a response to the Petition. (ECF No. 7).

On December 22, 2018, Petitioner advised the undersigned that Respondent had contacted him and requested that he withdraw the Petition and his request for the return of the Child. (Aff. Maya Eckstein ¶ 5.) Respondent still did not file any response to the Petition with the Court, however. Thus, on December 28, 2018, in accordance with Virginia law (Va. Code. § 8.01-296(2)(b)), the undersigned mailed Respondent a second copy of the Summons, a copy of the Proof of Service, a copy of the Petition, and a copy of the Petition that had been translated into Spanish. (Aff. Maya Eckstein ¶ 6.) The undersigned also included a cover letter explaining (in Spanish) that the undersigned represents Petitioner and that the deadline for Respondent to file a response to the Petition was December 31, 2018. (Aff. Maya Eckstein ¶ 6.) On December 29, 2018, the undersigned received confirmation that these documents were successfully delivered to Respondent. (Aff. Maya Eckstein ¶ 7.)

Despite these efforts, Respondent did not file an Answer or any other response to the Petition by December 31, 2018, or any other time since.  Petitioner accordingly filed a Request for Entry of Default against Respondent (ECF No. 12) on February 12, 2019, which the Clerk approved and then entered default against Respondent that same day. (ECF No. 13.)

## II.     Jurisdiction

This Court has subject matter jurisdiction pursuant to 22 U.S.C. § 9003 and because this case involves the wrongful retention in the United States of America of a child under the age of sixteen[3] from her habitual residence of Honduras. This Court has personal jurisdiction because the

---

[3] Because the Child was born in 2013, she will be under the age of sixteen and therefore protected by the terms of the Convention until 2029.

Respondent and the Child are located in this judicial district. Venue is proper in the Eastern District of Virginia because the Respondent and the Child are located in this judicial district.

### III. Analysis

#### A. Service was Proper

The Federal Rules of Civil Procedure allow for service of process on an individual according to the laws of the state in which the presiding federal court is located. Fed. R. Civ. P. 4(e). Virginia law permits service by means of posted process, i.e., "posting a copy of [the] process at the front door or at such other door as appears to be the main entrance of [the named individual's] place of abode." Va. Code § 8.01-296(2)(b). Virginia law further requires that, where service was effectuated via posted process, at least 10 days before judgment by default may be entered, the party causing service must mail to the party served a copy of such process, and thereafter file in the office of the clerk of the court a certificate of such mailing. *Id.*[4]

As described previously, Petitioner arranged for service to be effected on Respondent following the Court's issuance of the Summons. Service was properly completed on December 10, 2018, according to the Proof of Service filed with the Court. (ECF No. 9.) The Proof of Service states that Respondent was served by means of posted process, a valid method under Virginia law. (*Id.*)

Respondent subsequently contacted Petitioner on or before December 22, 2018, at which time Respondent asked Petitioner to withdraw the Petition. Even though Petitioner refused this request, Respondent still did not file any Answer or other response to the Petition. As the deadline

---

[4] Although the language in the Virginia Code is not specific as to whether it is just the mailing of the process, or the mailing *and* the filing of the certification that must take place more than ten days before seeking default judgment, the "certification" form provided for use in state courts indicates that it is only the former. *See* http://www.courts.state.va.us/forms/district/dc413.pdf.

for an Answer drew closer, on December 28, 2018, Petitioner—through counsel—mailed Respondent a second copy of the Summons in this case, a copy of the original Proof of Service showing that process had been posted on Respondent's door, a copy of the Petition, a Spanish translation of the Petition (out of an abundance of caution), and a cover letter in Spanish explaining what the documents were and that Respondent needed to file a response with the Court by December 31, 2018. On December 29, 2018, Petitioner's counsel received confirmation that these mailed materials had been delivered.

On February 12, 2019, more than ten days after mailing Respondent a copy of the process and other materials, Petitioner filed a Request for Clerk's entry of default, accompanied by an Affidavit from Maya Eckstein certifying that counsel had mailed the required process (ECF Nos. 12, 12-1.) This Affidavit served as Petitioner's "certificate of such mailing", as required by Va. Code § 8.01-296(2)(b). Because both the original service and the subsequent mailing were completed in accordance with Virginia law, and because Respondent acknowledged timely receipt of the process when she asked Petitioner to withdraw his Petition, service upon Respondent was properly executed, and the matter is appropriate for default judgment.

    B.  <u>Petitioner is Entitled to Relief under the Hague Convention</u>

The United States has been a Contracting State to the Hague Convention since 1988 and is therefore obligated to enforce the provisions of the Convention. Article 12 of the Hague Convention directs that when a child has been wrongfully removed from her country of habitual residence, the Contracting State shall order the prompt return of the child if less than a year has elapsed between the alleged wrongful removed and the commencement of the proceeding. Hague Convention, Art. 12 (ECF No. 1-1 at 4.)

The Child was born in Honduras and lived there her entire life, until Respondent brought her to the United States in March of 2018 without Petitioner's knowledge or consent. Therefore,

Honduras is the Child's country of habitual residence. *See* Hague Convention, Art. 3 (ECF No. 1-1 at 2). Less than a year elapsed between Respondent's removal of the Child and when Petitioner filed the Petition on December 4, 2018. Therefore, the central legal question for the Court is whether Respondent's removal of the Child was "wrongful" within the meaning of the Hague Convention.

The Hague Convention provides that the removal of a child will be considered "wrongful" where (1) it is in breach of custody rights attributed the petitioning parent, under the law of the country in which the child was habitually resident immediately before the removal; and (2) at the time of the removal those rights were actually exercised by the petitioning parent, or would have been so exercised but for the removal or retention. *See* Hague Convention, Art. 3 (ECF No. 1-1 at 2).

Here, the Child lived in Honduras her entire life, up until the time of her removal to the United States. (Pet. ¶ 21 (ECF No. 1).) The Child engaged in relationships with friends and family members in Honduras, including her paternal grandparents and aunts, and regularly attended a private, bilingual school, for which the Petitioner paid. (Pet. ¶ 21.) The Child was completely settled and integrated in Honduran life and culture. Accordingly, Honduras is her country of habitual residence within the meaning of Article 3 of the Hague Convention, and Honduran law governs both Petitioner's and Respondent's custody rights.

Petitioner's parental rights are established under the Honduran civil code pursuant to *patria potestas*.[5] According to the civil code, parental authority is exercised jointly, even when the parents do not cohabitate. *See* Honduran Family Code, Title V (Custody), Chapter I (General Provisions),

---

[5] A translation of the relevant portion of the Honduran civil code was attached to the Petition as Exhibit B. (ECF No. 1-2.)

Arts. 187, 193 (ECF No. 1-2 at 3). Moreover, where parental authority is exercised by both parents and one parent wishes to travel outside of Honduras with a child, the written authority of the other parent is required. *See* Honduran Code of Childhood and Adolescence, Chapter III (Authorization to Travel), Art. 101 (ECF No. 1-2 at 2). Respondent did not obtain Petitioner's written permission—or even alert him of her intention—to take the Child from Honduras to the United States, in breach of Petitioner's custody rights. (Pet. ¶¶ 6, 22.)

At the time Respondent removed the Child from Honduras, Petitioner was actively exercising his custody rights. The Child regularly spent weekends with him, and he paid for a nanny to take care of the Child when the Child stayed with Respondent. (Pet. ¶ 3.) As the Child grew older, Petitioner paid for the Child to attend a private school. (*Id.*) Petitioner never surrendered his custody rights in Honduras, nor did he authorize Respondent to remove the Child to a place where he could not be part of her life.

As a result of the foregoing, the Hague Convention requires that the Child be returned to her home country of Honduras so that a custody determination can be made in the place of the Child's habitual residence. The facts pled in the Petition and set forth again in this Memorandum support a finding that default judgment is proper for Petitioner.

### IV. Request for Relief

In light of Respondent's failure to appear, respond to the Petition, or otherwise acknowledge these proceedings, the facts set forth in this Memorandum, and the principles of international comity embodied in the Hague Convention, Petitioner respectfully requests that the Court enter default judgment in his favor, in the form of a permanent Order directing:

a. The prompt return of the Child to her habitual residence of Honduras;

 b. The United States Marshals Service's assistance in collecting the Child from Respondent and escorting the Child to the appropriate international airport and onto her flight, as needed;[6]

 c. That Respondent allow Petitioner to communicate with the Child via telephone, Skype, or other form of electronic communication on a daily basis for up to 30 minutes each day, in advance of the Child's return to Honduras if such return cannot be immediately arranged, to prevent further alienation of Petitioner and to re-enforce the relationship between Petitioner and Child; and

 d. Any such further relief as justice and its cause may require.

Dated: April 3, 2019

Respectfully submitted,

By: _____/s/_____
Maya M. Eckstein (VSB No. 41413)
E-mail: meckstein@hunton.com
Ann E. Hancock (VSB No. 91010)
E-mail: hancocka@hunton.com
Lewis F. Powell, III (VSB No. 18266)
E-mail: lpowell@hunton.com
Hunton Andrews Kurth LLP
951 East Byrd Street, East Tower
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 344-7999

Attorneys for Petitioner

---

[6] Petitioner has been attempting to acquire a visa to travel to the United States for the purpose of participating in these proceedings and accompany the Child in her return to Honduras. If he is able to obtain a visa, Petitioner requests the Marshals' assistance in collecting the Child from Respondent. If Petitioner is unable to acquire a visa, he requests that the Court order the Marshals to collect the Child from Respondent and escort her to her return flight to Honduras, which Petitioner will arrange for the Child.

9

CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2019, I caused a copy of the foregoing to be electronically filed using the CM/ECF system and additionally arranged for service on Respondent.

By: /s/ Maya M. Eckstein