UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| OSCAR ANTONIO DIAZ HUETE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 18-cv-01485 (AJT/IDD) |
| ) | |
| JESSIKA OLIVETH SANCHEZ ) | |
| SANCHEZ, ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion for Default Judgment from Oscar Antonio Diaz Huete ("Petitioner") against Jessika Oliveth Sanchez Sanchez ("Respondent"), pursuant to Federal Rule of Civil Procedure 55(b)(2). Plf. Mot. to Enter Default J., ECF No. 15. After the Respondent or a licensed attorney for the Respondent failed to appear at the hearing on April 26, 2019, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Petition, Petitioner's Motion for Default Judgment, and the memorandum thereto, the undersigned Magistrate Judge makes the following findings and recommends that default judgment be entered against Respondent.

**I.    INTRODUCTION**

Petitioner filed the Petition on December 4, 2018, for the return of his daughter ("Child") to Honduras under 22 U.S.C. § 9001 *et seq.* Pet., ECF No. 1. The Petition alleges that Respondent, Child's mother, removed Child from her home in Honduras and took her to Virginia without Petitioner's consent. Pet. ¶ 18. Petitioner's claim of child abduction is based on the Convention on

the Civil Aspects of International Child Abduction, created at the Hague on October 25, 1980 ("Hague Convention") and the International Child Abduction Remedies Act ("Act"). *Id.*

After Respondent failed to respond to the Petition or appear at any proceedings in this matter, Petitioner moved for default judgment against Respondent and requests that the Court order the return of the Child to her habitual residence of Honduras and award attorney's fees, costs, and other relief that the Court deems appropriate. Pet. ¶ 25. The undersigned Magistrate Judge took the matter under advisement to issue this Report and Recommendation.

### A.   Jurisdiction and Venue

Rule 55 of the Federal Rules of Civil Procedure provides for default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). For a Court to render default judgment against a party, it must have both subject matter jurisdiction and personal jurisdiction. This Court has subject matter jurisdiction over this action pursuant to 22 U.S.C. § 9003(a), which provides that United States district courts shall have concurrent original jurisdiction of actions arising under the Hague Convention. Venue is appropriate in this district because although the Respondent is not a resident of the United States, she is located in this district. *See* 28 U.S.C. § 1391(c)(3) (stating that a defendant who is not a resident in the United States may be sued in any judicial district). A more detailed analysis is required for determining personal jurisdiction.

Personal jurisdiction may be founded on either of two theories: general or specific jurisdiction. When "a suit does not arise out of the defendant's activities in the forum state, the court must exercise general jurisdiction and the requisite minimum contacts between the defendant and the forum state are fairly extensive." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir. 1993) (internal quotations omitted). Indeed, those contacts must be "continuous and

systematic." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Saudi v. Northrop Grumman*, 427 F.3d 271, 276 (4th Cir. 2005). The "paradigm" example of general personal jurisdiction is the individual's domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Conversely, when a suit arises out of the defendant's activities with the forum state, then a court may exercise specific jurisdiction. *See Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 660 (4th Cir. 1989); *Helicopteros*, 466 U.S. at 414 n.8. In such a case, the contacts need not be so extensive, but "the 'fair warning' requirement inherent in due process still demands that the defendant 'purposely directed' its activities at the forum." *Federal Ins.*, 886 F.2d at 660 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). The Fourth Circuit has expressed due process requirements for asserting specific personal jurisdiction through a three part test in which it considers "(1) the extent to which the defendant purposefully availed himself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

This Court has general jurisdiction over Respondent because of her continuous and systematic contacts with Virginia. Though the Court finds that Respondent is not domiciled in Virginia because there is no evidence of attempts to obtain United States citizenship, she nevertheless resides in Virginia for the time being. Respondent has been residing in Virginia since March 2018, thereby rendering her minimum contacts with Virginia extensive. *See* Pet. ¶ 19.

The Court also has specific jurisdiction over Respondent. First, Respondent has purposefully availed herself of the privileges of conducting activities in Virginia because she resides in the State. Second, Petitioner's claims arise out of those activities directed at Virginia

3

because Respondent removed Child from her home in Honduras and brought her to Virginia. Finally, the exercise of personal jurisdiction would be constitutionally reasonable because as a resident of Virginia, she has minimum contacts with the State. Since moving to Virginia, Respondent has had a fair warning that her activities within the State would subject her to jurisdiction of Virginia. Accordingly, this Court finds that it has personal jurisdiction over Respondent.

### B. Service of Process

Federal Rule of Civil Procedure 4(e)(1) provides that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . . ." FED. R. CIV. P. 4(e)(1). Virginia law permits substitute service via posting if the party being served cannot be found at her usual place of abode and a family member who is sixteen years or older is not found at the individual's place of abode. VA. CODE. ANN. § 8.01-296. According to the proof of service and statements made in Petitioner's Supplemental Brief, it appears that substitute service was proper.

The proof of service indicates that a copy of the Summons and Petition was posted to Respondent's address at Hood Road, Manassas, Virginia 20110 on December 10, 2018. Proof of Serv., ECF No. 9. Although the proof of service does not indicate multiple attempts at personal service prior to effectuating substitute service, Respondent acknowledged that she received the Summons and Complaint in December 2018 when she reached out to Petitioner and asked Petitioner to terminate this case. *See* Supplemental Brief, ECF No. 22 at 6. This acknowledgment is sufficient for service of process under VA. CODE. ANN. § 8.01-288, which provides that a process which has reached the person to whom it is directed within the time prescribed by law, shall be sufficient although not served or accepted. Respondent accepted service by acknowledging she

4

received the Summons and Petition. Therefore, this Court finds that service of process was proper.

### C. Grounds for Default

Petitioner filed the Petition on December 4, 2018. Pet., ECF No. 1. Respondent failed to file an answer or any responsive pleading in this matter. On February 12, 2019, the Clerk entered default against Respondent upon Petitioner's Request for Entry of Default. ECF Nos. 12-13. On April 3, 2019, Petitioner filed a Motion for Default Judgment, and the Court held a hearing on the matter on April 26, 2019. Plf. Mot. for Default J., ECF No. 15; Mot. for Default J. Hr'g, ECF No. 20. After Respondent or counsel for Respondent failed to appear at the April 26, 2019 hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Both Petitioner and Respondent are citizens of Honduras and had Child, outside of marriage, on January 3, 2013, in Honduras. Pet. ¶ 2. Child is under the age of sixteen. *Id.* ¶ 15. From January 2013 to June 11, 2016, Petitioner, Respondent, and Child lived together as a family in Honduras, but were not married. *Id.* ¶¶ 2, 16. In June 2016, Petitioner and Respondent separated, and Respondent subsequently married someone else taking Child with her. *Id.* ¶ 3. Petitioner continued to support Child by paying for a nanny and school fees to attend a private school. *Id.* Child also regularly spent the weekend with her father. *Id.*

Sometime in March 2018, Child's school informed Petitioner that Child had not attended school since March 6, 2018. *Id.* ¶ 4. The school did not provide further information, so Petitioner attempted to contact Respondent, but was unsuccessful. *Id.* Petitioner then contacted Respondent's family, however, Respondent's family did not disclose the location of Respondent and Child. *Id.* By this time, Respondent had divorced the man she married after separating from Petitioner. *Id.*

On March 30, 2018, Respondent called Petitioner and informed him that she and Child were in the United States. *Id.* ¶ 5. Respondent would not give an exact location but based on the telephone number from which Respondent had dialed, Petitioner discerned that the call came from Virginia. *Id.* Petitioner did not consent to moving Child to the United States without him. *Id.* ¶ 6. In the summer of 2018, Petitioner asked Respondent for help in obtaining a visa so that he could visit Child. *Id.* ¶ 20. Respondent refused and stated that there was no need for Child to see him. *Id.* In August 2018, Respondent then began restricting Petitioner's ability to speak with Child. *Id.* Petitioner has not spoken with Child since September 13, 2018. *Id.*

Accordingly, Petitioner argues that Respondent has denied Petitioner, Child's father, any opportunity to exercise his custody rights and participate in the upbringing of his daughter. *Id.* ¶ 7. He seeks declaratory relief—a ruling, consistent with principals of international comity and the treaty obligation of the United States, as to the proper forum in which such a determination should be made. *Id.* ¶ 8.

### III.  **EVALUATION OF PETITION**

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A defendant in default concedes the factual allegations of the complaint. *See, e.g., DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206

(5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Petitioner's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Petition contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

**A. Wrongful Removal of Child under the Hague Convention**

The purpose of the Hague Convention, to which the United States and Honduras are signatory, is "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." *Maxwell v. Maxwell*, 588 F.3d 245, 250 (4th Cir. 2009) (quoting the Hague Convention on the Civil Aspects of International Child Abduction, pmbl., T.I.A.S. No. 11,670, 19 I.L.M. 1501 (Oct. 25, 1980)). To prove the wrongful retention of a child, a petitioner must prove by a preponderance of the evidence that (1) "it is a breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention," (2) the removal violated the petitioner's custody rights under the law of the home country, and (3) the petitioner exercised custody rights over the child at the time of the

removal.[1] Hague Convention, art. 3, 19 I.L.M. at 1501; 22 U.S.C. § 9003(e)(1)(A); *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001); *see also* 22 U.S.C. § 9003(e).

### i. Habitual Residence of Child

In furtherance of the intent of the Hague Convention, courts are required to preserve the status quo, *i.e.*, preserve the habitual residence of a minor child. *See Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001). The framers of the Hague Convention purposefully left the definition of "habitual residence" vague. *See Alcala v. Hernandez*, 2014 U.S. Dist. LEXIS 153728, at *11-13 (D.S.C. 2014). Accordingly, the place of habitual residence is established based on the circumstances of each case. *Id.* To establish the place of habitual residence before the removal or retention, federal courts use a two-part framework. *See Maxwell*, 588 F.3d at 251; *Velasquez v. De Velasquez*, 2014 U.S. Dist. LEXIS 175625, at *8-9 (E.D. Va. 2014). The first question federal courts analyze is whether both parents shared an intention to move from the country of residence. *Velasquez*, 2014 U.S. Dist. LEXIS 175625, at *8-9. The second question is whether there was an actual change in geography within an appreciable period of time, such that the child will be acclimatized to the new residence. *Id.* at *9.

Child's habitual residence is Honduras. First, both parents did not have a shared intention to move from Honduras to the United States. Petitioner did not know that Child moved to the United States until weeks after Child had already been removed from Honduras. Pet. ¶ 19. Petitioner did not consent to Respondent relocating Child to Virginia; rather, Respondent

---

[1] Article 3 of the Hague Convention only lists two considerations: (1) "it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention;" and (2) "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." However, the Fourth Circuit interprets violations of the Hague Convention through an added third prong: whether the removal or retention of a child violates the petitioner's custody rights in his or her home country. *See, e.g., Humphrey v. Humphrey*, 434 F.3d 243, 246 (4th Cir. 2006); *Bader v. Kramer*, 484 F.3d 666, 668 (4th Cir. 2007).

unilaterally decided to remove Child. *Id.* ¶ 22. Second, even though there was an actual change in geography because Respondent took Child to the United States, there is no evidence before the Court to suggest this change was not "coupled with the passage of an appreciable period of time, one sufficient for acclimatization by the children to the new environment." *Maxwell*, 588 F.3d at 251. Child was born in Honduras and remained there until she was removed by Respondent over a year ago. Pet. ¶¶ 2, 5. Although Child has remained in the United States for over a year, which may lead to an inference of acclimation, there is no evidence that Child attends school in Virginia, that she is a legal resident of the United States, or that she participates in school activities. The length of stay is only but one factor to consider when determining Child's acclimation. Without other evidence that Child has acclimated to the United States or Virginia, the Court finds that Child's habitual residence remains Honduras.

### ii. Custody Rights and Violation of Custody Rights

Under Honduran law, "the exercise of parental authority belongs to both parents jointly." Honduran Family Code, Title V (Custody), Chapter I (General Provisions), Art. 187. Moreover, parents who do not cohabitate still share the care and custody of the children. Honduran Family Code, Art. 193. When a parent reserves *patria potestas* rights over a child, among the rights the parent retains is the right to choose where the child is domiciled. *Alcala*, 2014 U.S. Dist. LEXIS 153728 at *15; *see also* 22 U.S.C. § 9003(e). As such, a parent who wishes to travel outside of Honduras must obtain written permission from the other parents. Honduran Code of Childhood and Adolescence, Chapter III (Authorization to Travel), Art. 101.

Petitioner has custody rights over Child under Honduran law. When Petitioner and Respondent separated, Petitioner did not relinquish his custody rights over Child. Pet. ¶ 3. Petitioner still had *patria potestas* rights over Child. As such, Respondent was required to obtain

permission from Petitioner of her intent to move Child to the United States. *See* Honduran Code of Childhood and Adolescence, Chapter III (Authorization to Travel), Art. 101. Respondent failed to seek permission or inform Petitioner that she was removing Child from Honduras. Pet. ¶ 18. She instead informed Petitioner weeks after Child had already been removed from Honduras. *Id.* ¶ 19. Therefore, Petitioner retained custody rights over Child and the removal of Child violated Petitioner's custody rights.

### iii. Exercise of Custody Rights

To retain custody rights of a child under the Hague Convention, a petitioner must prove he exercised those custody rights. *Alcala*, 2014 U.S. Dist. LEXIS 153728, at *14-16; *Sabogal v. Velarde*, 106 F. Supp. 3d 689, 700 (D.M.D. 2015); 22 U.S.C. § 9003(e). While the exercise of those custody rights differs in every case, the courts may look to individual facts, such as how much time a parent spent with a child before removal or retention, and whether the parent contributed to the child's education and healthcare. *See, e.g., Alcala*, 2014 U.S. Dist. LEXIS 153728, at *14 (finding father's custody rights claim credible because he was listed as the oldest son's guardian responsible for attending teacher-parent conferences and had taken his youngest child to the doctor the day before the wrongful removal); *Sabogal*, 106 F. Supp. 3d at 702 (finding a proper exercise of custody rights in a case where the father consistently tried to contact the mother, the children's school, and the police in order to regain access to his children).

Petitioner retained custody rights over Child at the time of the wrongful removal and he exercised such rights over Child. After Respondent and Petitioner separated in June 2016, Petitioner continued to financially support Child by paying for a nanny and, subsequently, for a private school. Pet. ¶ 3. Petitioner continued to pay for a nanny and a private school at least until March 2018, when he was informed that Child had not attended school since March 6, 2018. *Id.*

¶¶ 3, 18. Child also regularly spent weekends with Petitioner and maintained a relationship with Petitioner's family. *Id.* ¶¶ 3, 21. Further, Petitioner has consistently attempted to contact Child and have Respondent bring her back to Honduras. *Id.* ¶ 19. Petitioner went so far as to seek a visa, so he could visit Child in the United States. *Id.* ¶ 20. Based on these facts, the undersigned finds that Petitioner retained and exercised custody rights over Child at the time of removal.

Accordingly, the Court finds Petitioner demonstrated by a preponderance of evidence that Respondent wrongfully removed Child from Honduras. Petitioner exercised and retained his custody rights over Child after he separated from Respondent. Respondent breached Petitioner's custody rights by removing Child from her habitual residence of Honduras and violated Petitioner's *patria potesta* rights by removing Child from Honduras without Petitioner's consent. Child should be returned to Honduras.

## IV. **RECOMMENDATION**

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Petitioner, Oscar Antonio Diaz Huete against Respondent Jessika Oliveth Sanchez Sanchez for violation of 22 U.S.C. § 9001 *et seq.* The undersigned further recommends that an Order be entered directing the prompt return of Child to her habitual residence of Honduras. Additionally, the undersigned recommends an Order directing Respondent to pay Petitioner's legal costs and fees pursuant to 22 U.S.C. § 9007(b)(3).

## V.  NOTICE

By mailing copies of this Report and Recommendation, the Court notifies the parties as follows.  Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to Respondent at the following physical and email addresses:

Jessika Oliveth Sanchez Sanchez
9234 Hood Road
Manassas, VA 20110

August 16, 2019
Alexandria, Virginia

/s/
Ivan D. Davis
United States Magistrate Judge